Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| JORGE GARCÍA SOLER  Apelante  v.  SITE RESOURCE GROUP (PUERTO RICO) LLC  Apelado | TA2025AP00162 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Cabo Rojo  Civil núm.: CB2024CV00118  Sobre: Despido Injustificado |
|---|---|---|

Panel integrado por su presidente el juez Hernández Sánchez, el juez Rivera Torres y el juez Marrero Guerrero.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 22 de agosto de 2025.

Comparece ante este tribunal apelativo, el Sr. Jorge García Soler (señor García Soler o el apelante) mediante el recurso de apelación de epígrafe solicitándonos que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Cabo Rojo (TPI), el 1 de julio de 2025, notificada el 10 de julio siguiente. Mediante este dictamen, el foro primario declaró *NO HA LUGAR* a la querella instada por el apelante basado en la *Solicitud de Sentencia Sumaria* presentada por SITE Resource Group (Puerto Rico) LLC (SITE o la parte apelada). En consecuencia, desestimó el caso y decretó el archivo de la demanda con perjuicio.

Por los fundamentos que expresamos a continuación, determinamos desestimar el recurso ante el craso incumplimiento con las disposiciones reglamentarias para su perfeccionamiento.

### I.

El 21 de febrero de 2024, el señor García Soler instó una *Querella* en contra de Centurion Group (Puerto Rico), LLC

(Centurion)[1] sobre despido injustificado, a tenor con el procedimiento sumario para reclamaciones laborales dispuesto en la Ley núm. 2 del 17 de octubre de 1961, según enmendada. En esta, alegó que trabajó para Centurion desde el 27 de julio de 2022 hasta el 10 de octubre de 2023, realizando labores como "Arborista" y "Crew Leader", mediante contrato sin tiempo determinado. Indicó que mantuvo un desempeño satisfactorio en su empleo y que el 10 de octubre de 2023 fue despedido de forma arbitraria e injustificada. Esto, sin haber incurrido en faltas o en conducta lesiva que ameritaran su despido, por lo que dicho proceder contraviene las disposiciones de la Ley núm. 80 de mayo de 1976, *infra*; así como la jurisprudencia que la interpreta.

Por ello, el apelante solicitó $15,000 por compensación por concepto de la mesada, la indemnización progresiva, más los honorarios de abogado del procedimiento.

El 25 de marzo de 2024, Centurion presentó su *Contestación a Querella* en la que aceptó algunas alegaciones y negó otras. Entre las defensas afirmativas, expuso las siguientes: "... 5. El querellante fue despedido debido a reiteradas violaciones a las políticas de seguridad y hostigamiento sexual de la Compañía. El querellante recibió amonestaciones, en repetidas ocasiones por incidentes separados en los que violó los protocolos y acuerdos relacionados a la prevención/manejo de hostigamiento sexual en el ámbito laboral. El día 23 de marzo de 2023, el querellante fue acusado, nuevamente, de tocar de manera inapropiada e indeseada a una compañera de trabajo. Incluso tras haber sido amonestado verbalmente, el querellante continuó exponiendo la víctima a un patrón de contacto físico indeseado. Las acciones del querellante constituyen un patrón

---

[1] Mediante la *Resolución y Orden* emitida por el TPI el 12 de septiembre de 2024, notificada el 16 de septiembre siguiente, se ordenó a la Secretaría a cambiar el nombre de la parte querellada (apelada) en el epígrafe a SITE Resource Group (Puerto Rico), LLC. Véase, el Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI, Entrada núm. 23.

de hostigamiento sexual que culminaron con una querella presentada ante la Unidad Anti-Discrimen. Centurion se encuentra en la obligación de proveer y promover un entorno libre de acoso para todos sus empleados.; 6. Centurion actuó por razones legítimas, vinculadas al buen y normal funcionamiento del negocio. El despido no fue caprichoso ni arbitrario. ...["2"]

El 21 de septiembre de 2024, la parte apelada presentó ante el foro primario una *Moción Informativa sobre Cambio de Nombre de la Parte Querellada y en Solicitud de Orden.* En esta, expresó que el nombre corporativo de la entidad querellada-apelada cambió a SITE Resource Group (Puerto Rico), LLC, por lo que solicitó que se dictase una orden a Secretaría para que se cambie el nombre de la entidad Centurion Group (Puerto Rico), LLC a SITE Resource Group (Puerto Rico), para que así conste en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Como indicamos previamente, el TPI accedió a lo peticionado.

Así las cosas, el 12 de mayo de 2025, SITE presentó ante el foro *a quo* una *Solicitud de Sentencia Sumaria* en la que solicitó la desestimación sumaria del caso.[3] En esta, propuso setenta (70) determinaciones de hechos incontrovertidos, los que, a su entender, permiten dicho proceder. Acompañó a su petitorio los siguientes documentos: Declaración Jurada suscrita por la Gerente de Oficina de SITE, la Sra. Celeste Martínez Cabán; Contrato de trabajo del 23 de mayo de 2022; Toma de Deposición del apelante; Paquete de incorporación firmado electrónicamente por Jorge García Soler; *FBI Background check* y Acuse Recibo-Jorge García Soler sobre hallazgos; *Política de Discriminación Violencia y Acoso*; Certificado de Curso Completado; *Guía de acción disciplinaria*; *Procedimiento de*

---

[2] Véase, el Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI, Entrada núm. 4.
[3] *Íd.*, Entrada núm. 43.

*Acción Disciplinaria*; Aviso Acción Disciplinaria del 28 de diciembre de 2022; Aviso Acción Disciplinaria del 18 de enero de 2023; Segundo Aviso Acción Disciplinaria del 14 marzo 2023; Carta sobre enmienda al contrato de trabajo de 21 marzo de 2023; Transcripción de la deposición de la Sra. Lynnette Matos Sosa; Notas de la señora Matos Sosa del 14 de noviembre de 2022; Informe Interno Investigación; y Cargo discrimen ante la UAD de Lynnette Matos. Carta de Despido fechada con el 10 de octubre de 2023.

El 13 de mayo de 2025, notificada el 23 de mayo posterior, el foro primario emitió una *Resolución y Orden* concediendo el término de veinte (20) días al apelante para expresarse sobre la *Solicitud de Sentencia Sumaria*. Una vez transcurrido dicho plazo, el 13 de junio, SITE instó una *Solicitud de Orden dando por Sometida la Moción de Sentencia Sumaria* en la que expresó que, conforme a la Regla 36.3(b) de las de Procedimiento Civil de Puerto Rico, se entienda que la moción de sentencia sumaria queda sometida para la consideración del tribunal.[4] Mediante una Resolución Interlocutoria emitida y notificada el 16 de junio, el TPI decretó *Con Lugar* al pedido y dio por sometida la moción de sentencia sumaria.[5]

Analizado el antedicho petitorio desestimatorio, el 1 de julio de 2025, el foro apelado emitió la *Sentencia* apelada en la que esbozó setenta (70) determinaciones de hechos incontrovertidos, los que a su entender le permiten resolver el pleito sumariamente.[6]

A su vez, el foro primario razonó que:[7]

> …
> En cambio, en la referida moción SITE expuso las alegaciones de las partes, desglosó en párrafos debidamente numerados los hechos materiales y pertinentes sobre los cuales, a su entendimiento, están incontrovertidos y para cada uno de los hechos especificó página y párrafo de aquellos testimonios, declaraciones y prueba documental que apoya las razones por las cuales debe dictarse sentencia a la luz

---

[4] *Íd.*, Entrada núm. 51.
[5] *Íd.*, Entrada núm. 52.
[6] *Íd.*, Entrada núm. 53, a las págs. 2-9.
[7] *Íd.*, a las págs. 14-16.

del derecho aplicable. Además, la querellada estableció el derecho aplicable y demostró preponderantemente que no existe controversia sobre los hechos materiales y pertinentes de esta reclamación. Determinamos, en primera instancia, que no existe controversia real y sustancial fáctica que impida desestimar el caso de epígrafe incoado por parte querellante al amparo de la Regla 36.2 de las de Procedimiento Civil, 32 LPRA Ap. V. De la prueba testimonial transcrita y anejada a dicha moción de la querellada en unión con la documental debidamente autenticada y también anejada a la misma quedó demostrado que hubo justa causa para el despido del querellante toda vez que no hay controversia que la señora Matos sufrió incidentes incomodos, indeseados y hostigantes de carácter sexual por parte del querellante en el ámbito laboral y que el querellante ostentaba al menos tres (3) amonestaciones previo a los hechos que culminaron en su despido el 10 de octubre de 2023. Es un hecho que la querellada cuenta con una normativa que prohíbe el hostigamiento sexual en el empleo y toda clase de discrimen y acoso laboral, incluyendo por razón de sexo y género; que el querellante accedió y consintió a cumplir con las normas de conducta de la querellada, incluyendo su política antidiscriminatoria y de seguridad, mediante su contrato de empleo y paquete de incorporación; que mediante el contrato de empleo y la Guía de Acción Disciplinaria al querellante se le advirtió que una violación a las normas de la empresa puede ser causa para un despido automático.

Igualmente, no hay controversia que el querellante recibió adiestramientos sobre hostigamiento sexual y discrimen ilegal durante su empleo y que conducta impropia, discriminatoria por sexo o género y actos de hostigamiento sexual violentan las políticas de la SITE, a lo que igual una o múltiples infracciones a las políticas de la querellada podría desembocar en una advertencia verbal, advertencia escrita, suspensión y/o despido del empleado.

La querellada demostró que el querellante ostentaba al menos tres (3) amonestaciones previo a los hechos que culminaron en su despido el 10 de octubre de 2023 y no hay controversia que múltiples infracciones a las políticas de políticas de seguridad y/o de SITE acarrean el despido del empleado y que el querellante había sido orientado antes de comenzar su empleo de las limitaciones que tenía porque contaba con historial delictivo previo por conducta sexual ilegal. La querellada llevó a cabo una investigación interna iniciada los días 1 y 3 de abril de 2023 para atender las quejas de la empleada Lynnette Matos y durante la misma se reunió con esta y se recopiló varios reportes de incidentes. Matos acudió a la Unidad Antidiscrimen donde reportó alegaciones adicionales contra el Querellante y supervisores a las presentadas internamente el 3 de abril de 2023.

Por ejemplo, la señora Matos declaró por escrito que el querellante le preguntó a la señora Matos sobre su uso de toallas sanitarias, específicamente si ella utilizaba "tampón o kotex" y le dijo a ella que debía traerlo al trabajo en caso de cortaduras porque son "muy absorbentes". En diciembre de 2022, el Querellante, a espaldas de la señora Matos, le agarró la pierna a la señora Matos "haciendo[le] una broma" una primera vez. La señora Matos lo miró de manera seria. Inmediatamente después, el querellante le agarró "la

pantorrilla", una segunda ocasión haciéndole ruidos de perro, mientras se dirigían hacia el camión asignado de la brigada y que luego el querellante le estaba mirando la "retaguardia" cuando este le dijo a la señora Matos que ella tenía "fondillo sucio" mientras ella estaba doblada apoyándose en la goma posterior de la guagua de la brigada buscando algo dentro de la caja de la guagua. No hay controversias del historial disciplinario de tres amonestaciones previas del querellante y que su último aviso disciplinario fue un "Final Warning". Es decir, el querellante fue amonestado múltiples veces mientras ejercía funciones por lo que fue objeto de múltiples Avisos de Acción Disciplinaria y un descenso de puesto.

Por tanto, al aplicar los preceptos de la Ley Núm. 80, el Poder Judicial no debe sustituir su propio criterio con el criterio patronal si la tal determinación laboral está dentro de las facultades discrecionales del patrono o si comprende la sana administración de la normativa interna del del patrono, siempre y cuando esta no es ilegal, contraria a derecho, ni irrazonable, caprichosa o arbitraria. Por ello conforme a la normativa anteriormente descrita, para demostrar justa causa, el patrono solo necesita establecer que tenía una base razonable para creer que el empleado incurrió en una acción que la ley identifica como causa justa.

La determinación de cesantear al querellante fue en virtud de las declaraciones tomadas durante la investigación interna que llevó a cabo la empresa y por la información adicional de la conducta del querellante por las imputaciones incoadas por la señora Matos a la cual la querellada advino en conocimiento debido al cargo presentado ante la UAD. Por tanto, la terminación de empleo del querellante estuvo justificada conforme a la normativa jurisprudencia concerniente a las disposiciones de la Ley Núm. 80 debido a la conducta desplegada por el querellante sobre la persona de señora Matos y en consideración también las sus amonestaciones previas que ostentaba el querellante siendo la última un "Final Warning", previo al cargo presentado en su contra ante la UAD. En consecuencia, el despido de la querellante no estuvo motivado por razones legalmente prohibidas y no fue producto del mero capricho del patrono. De la prueba admitida surge que la querellada investigó las quejas presentadas por la señora Matos en contra del querellante, la querellada identificó un patrón de violación a sus normas, por lo que determinó que procedía el despido del querellante por este infringir múltiples veces la[s] normas de la empresa.

Por tanto, se declara NO HA LUGAR la querella de epígrafe en virtud de las disposiciones de la Regla 36 de las Reglas de Procedimiento Civil de 2009 para el Tribunal General de Justicia, por lo que se desestima el caso de epígrafe y se decreta el archivo de la demanda con perjuicio.

En desacuerdo con lo determinado, el apelante acude ante este foro apelativo mediante el recurso de epígrafe imputándole al TPI haber incurrido en los siguientes errores:

PRIMER SEÑALAMIENTO DE ERROR: ERRÓ EL TPI AL ACOGER LA SOLICITUD SENTENCIA SUMARIA PRESENTADA POR LA PARTE QUERELLADA-APELADA Y DICTAR SENTENCIA SUMARIA

EXISTIENDO HECHOS ESENCIALES Y SUSTANCIALES EN CONTROVERSIA, LOS CUALES AMERITAN LA CONCESIÓN DE UN JUICIO EN SU FONDO.

SEGUNDO SEÑALAMIENTO DE ERROR: ERRÓ EL TPI AL DICTAR SENTENCIA SUMARIA ACOGIENDO UNA SOLICITUD DE SENTENCIA SUMARIA INSUFICIENTE.

TERCER SEÑALAMIENTO DE ERROR: ERRÓ EL TPI AL DICTAR SENTENCIA SUMARIA DESESTIMANDO LA CAUSA DE ACCIÓN SOBRE DESPIDO INJUSTIFICADO (LEY 80, 1976), PRIVANDO AL QUERELLANTE-APELANTE DE SU DÍA EN CORTE Y ACOGIENDO LOS ALEGADOS "HECHOS INCONTROVERTIDOS" ESBOZADOS POR LA PARTE QUERELLADA-APELADA.

El 14 de agosto de 2025, emitimos una *Resolución* concediendo a la parte apelada hasta el 21 de agosto de 2025 para expresarse. El 15 de agosto siguiente, se cumplió con lo ordenado mediante un escrito intitulado *Oposición a Apelación*, por lo que nos damos por cumplidos; y a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

## II.

**La Jurisdicción**

Los tribunales debemos ser celosos guardianes de nuestra jurisdicción, estando obligados a considerarla aun en ausencia de algún señalamiento al respecto de las partes. La razón para ello es que la jurisdicción delimita la potestad o facultad que los tribunales poseemos para atender una controversia ante nuestra consideración. Tal asunto debe ser resuelto con preferencia porque de carecer de jurisdicción para atenderlo, lo único que corresponde hacer es así manifestarlo. *Constructora Estelar v. Aut. Edif. Púb.*, 183 DPR 1, 22 (2011); *S.L.G. Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 883 (2007). El no tener la potestad para atender un asunto no puede ser corregido ni atribuido por el tribunal. *Constructora Estelar, S.E. v. Aut. Edificios Públicos*, supra.

En aquellas instancias en las que un ente adjudicador dicta una sentencia sin ostentar jurisdicción en la persona o en la materia, su determinación es "jurídicamente inexistente." *Maldonado v. Junta Planificación,* 171 DPR 46, 55 (2007). De ahí que, cuando un foro adjudica un recurso sobre el cual carece de jurisdicción para entender en este, ello constituye una actuación ilegítima, disponiéndose que cuando la ley expresamente proscribe asumir jurisdicción, no existe una interpretación contraria. *Íd.*

Como corolario de lo antes expuesto, el Reglamento del Tribunal de Apelaciones en la Regla 83, *supra*, dispone lo siguiente:

> (B) Una parte podrá solicitar en cualquier momento la desestimación de un recurso por los motivos siguientes:
>
> (1) que el Tribunal de Apelaciones carece de jurisdicción;
>
> (...)
>
> (C) El Tribunal de Apelaciones, a iniciativa propia, podrá desestimar un recurso de apelación o denegar un auto discrecional por cualesquiera de los motivos consignados en el inciso (B) precedente.

### III.

Nos corresponde, en primera instancia, atender el asunto relativo a la jurisdicción debido a que el mismo debe ser resuelto con preferencia a cualquiera otra cuestión, previo a entrar a considerar los méritos del recurso.[8] Esto, aun cuando las partes no lo hayan argumentado o solicitado. *Carattini v. Collazo Systems Analysis, Inc.,* 158 DPR 345, 355 (2003).

De entrada, señalamos que el señor García Soler, en su escrito de apelación, **no impugna las determinaciones de hechos formuladas por el foro primario**. Más bien, este especifica, como parte de su escueta discusión, que "...en ningún momento fue citado o entrevistado por el patrono; así como el patrono tampoco le brindó

---

[8] Véase, *Shell v. Srio. Hacienda*, 187 DPR 109 (2012); *Cordero et al. v. ARPe et al.,* 187 DPR 445, 457 (2012); y *Constructora Estelar v. Aut. Edif. Púb.,* 183 DPR 1 (2011).

la oportunidad de ser oído o de presentar su versión de los hechos sobre el alegado hostigamiento sexual que se le imputó. El patrono querellado, sin haber llevado a cabo una investigación en la cual escuchara al Querellante-Apelante, en relación a los alegados hechos, procedió a despedirlo inmediatamente y sin brindársele oportunidad de ser oído o de participar en un proceso de investigación. Es decir, el patrono querellado-apelado descansó única y exclusivamente en una querella instada en la Unidad Anti-Discrimen del Departamento del Trabajo por una exempleada de la empresa, para despedir al querellante sin ni tan siquiera escucharle."[9]

Por su parte, SITE en su oposición al recurso especificó que: "**Primero**, el Apelante no esboza fundamento alguno por el cual existen hechos esenciales y sustanciales en controversia para determinar que no hubo despido con justa causa. **Segundo**, el Apelante no expone por qué la Solicitud de Sentencia Sumaria de SITE es insuficiente conforme a derecho. **Tercero**, el Apelante no arguye qué hecho o grupo de hechos sustancialmente están realmente controvertidos que amerite la revisión de la Sentencia apelada a los efectos de que se demuestre que hubo un despido injustificado."[10]

Asimismo, resulta forzoso apercibir que el señor García Soler, en el recurso de apelación, dedicó la mayor parte a citar jurisprudencia sobre el despido y la moción de sentencia sumaria. Además, en el escrito arguyó, como discusión de los tres (3) errores, lo siguiente:[11]

> Con el mayor de los respetos, entendemos que era improcedente como cuestión de hecho y de derecho emitir una sentencia sumaria ya que, de un examen de los autos, de las alegaciones y de los escritos presentados por las partes, surge que existen **controversias de hechos sustanciales** que hacen

---

[9] Véase, *Recurso de Apelación*, a las págs. 6-7.
[10] Véase, *Oposición a Apelación*, a la pág. 9.
[11] Véase, *Recurso de Apelación*, a la pág. 11. Énfasis en el original.

> necesaria la **celebración de una vista en sus méritos**. En el presente caso resulta necesario que el TPI adjudique la credibilidad de los testigos y efectúe sus determinaciones basadas en prueba admisible. Adicionalmente, de la lectura de la moción de sentencia sumaria presentada se desprende que la misma es insuficiente para que un Tribunal aplicando un sabio discernimiento pudiera adjudicar el caso de autos por vía de sentencia sumaria.

Sin embargo, de la lectura minuciosa de lo previamente transcrito y del recurso en su totalidad, concluimos que el apelante falló en presentar una discusión fundamentada en derecho sobre los señalamientos de error. Más bien, este amparó su reclamo de revisión en expresiones generales sin especificar claramente cómo erró el TPI en su análisis y raciocinio. En este sentido, indicar solamente que existen **controversias de hechos sustanciales** que hacen necesaria la **celebración de una vista en sus méritos**, sin detallar a cuáles se refiere, ni hacer el más mínimo esfuerzo de refutar una o varias de las determinaciones de hechos formuladas por el foro primario, no pueden mover a esta *Curia* a considerar en los méritos el recurso. Notamos, además, que el apelante no explicó adecuadamente las razones jurídicas por las que entiende que la moción de sentencia sumaria presentada por SITE ante el foro *a quo* es insuficiente.

El Tribunal Supremo ha interpretado las disposiciones reglamentarias sobre contenido de los alegatos y resolvió que el escrito de revisión debe contener una discusión fundamentada y adecuada de los hechos y las fuentes de derecho que sustentan el señalamiento de error. *Morán v. Martí*, 165 DPR 356 (2005). Así pues, el más alto foro dictaminó que:

> La normativa antes reseñada, de forma clara y precisa, ordena que el escrito de apelación civil presentado ante el Tribunal de Apelaciones señale, **discuta y fundamente el error o los errores que se le imputan al foro de instancia**. **De lo contrario, el tribunal estará impedido de considerar el señalamiento de error planteado**. **El apelante tiene la obligación de poner en posición al foro apelativo de aquilatar y justipreciar el error anotado**. Solamente mediante un señalamiento de error y una discusión fundamentada, con referencia a los hechos y las fuentes de derecho en

que se sustenta, podrá el foro apelativo estar en posición de atender los reclamos que se le plantean. **Aceptar poco menos de eso convierte la apelación presentada en "un breve y lacónico anuncio de la 'intención de apelar'**." Srio del Trabajo v. Gómez Hnos. Inc., 113 D.P.R. 204, 207-208 (1982). Además, y más importante, el craso incumplimiento con estos requisitos impide que el recurso se perfeccione adecuadamente privando de jurisdicción al foro apelativo. *Íd.*, a la pág. 366. (Énfasis nuestro)

Al respecto, el Reglamento del Tribunal de Apelaciones, en la Regla 16(C)(1)(e)(f), dispone claramente que el recurso de apelación contendrá, entre otros, los siguientes requisitos, un señalamiento breve y conciso de los errores que cometió el TPI, y una discusión de los errores señalados incluyendo las disposiciones de ley y la jurisprudencia aplicables. *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, pág. 32, 215 DPR ___ (2025).

Acorde con la normativa antes expuesta, reiteramos que el señor García Soler no discutió los errores que le imputa al TPI. Por tanto, el incumplimiento craso de nuestras disposiciones reglamentarias impide que ejerzamos adecuadamente nuestra función revisora.

Enfatizamos que es norma claramente establecida que las partes, inclusive los que comparecen *pro se*, deben cumplir fielmente con las disposiciones reglamentarias dispuestas para la presentación y forma de los recursos y que su inobservancia puede dar lugar a la desestimación. *Pueblo v. Rivera Toro*, 173 DPR 137 (2008); *Lugo v. Suárez*, 165 DPR 729, 737 (2005); *Pellot v. Avon*, 160 DPR 125, 134-135 (2003); *Arriaga v. F.S.E.,* 145 DPR 122, 129-130 (1998).

Por último, precisa señalar que el único planteamiento que se apuntala ante nuestra consideración, relativo a que al apelante no se le ofreció una oportunidad para ser escuchado antes de ser despedido, no fue presentado ante el Tribunal de Primera Instancia, sino que **se presenta por primera vez ante este foro apelativo**. Sabido es que un tribunal apelativo no considerará planteamientos

formulados por primera vez en apelación o revisión. *Trabal Morales v. Ruiz Rodríguez,* 125 DPR 340, 351 (1990). Por consiguiente, estamos impedidos de justipreciar este argumento.

## **IV.**

Por los fundamentos antes expuestos, conforme a la Regla 83(B) del Reglamento del Tribunal de Apelaciones, desestimamos el recurso ante el incumplimiento craso con las normas para su perfeccionamiento.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones